# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM MCCRACKEN, | § | |
| | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-03-5726 |
| | § | |
| | § | |
| | § | |
| EXXON MOBIL CORPORATION | § | |
| INC., and KELLY SERVICES | § | |

## MEMORANDUM AND ORDER

William McCracken sued Exxon Mobil Corporation, Inc. and Kelly Services under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, alleging that they fired him from his job as a lab technician working at the Baytown Olefins Plant laboratory because of discrimination on the basis of his religion – Christian – and because of retaliation for his complaints of religious discrimination against other employees. Exxon Mobil has filed a motion for summary judgment, (Docket Entry No. 21), to which McCracken has responded, (Docket Entry No. 25). Exxon Mobil filed a reply, (Docket Entry No. 27), to which McCracken surreplied (Docket Entry No. 28). Based on the motion, response, reply, and surreply; the pleadings; the controlling case law; and the record, this court grants Exxon Mobil's motion for summary judgment. The reasons are explained below.

## I.    The Applicable Legal Standards

Under Title VII, it is unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  "A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail, just as in any other civil case where a plaintiff meets his burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996).  "However, because direct evidence of discrimination is rare, the Supreme Court has devised an evidentiary procedure that allocates the burden of production and establishes an orderly presentation of proof in discrimination cases." *Id.*; *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993).

To overcome a motion for summary judgment on Title VII discrimination claims, a plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801- 803 (1973); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Hall v. Gillman Inc.*, 81 F.3d 35, 37 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996); *Bodenheimer,* 5 F.3d at 957 n.4.  To establish a *prima facie* case of religious discrimination, the plaintiff must establish that he had a *bona fide* religious belief that conflicted with an employment requirement; that he informed the employer of this belief; and that the employer discharged the plaintiff for failure to comply with the conflicting employment requirement.  *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

2

Once the plaintiff makes a *prima facie* case, the burden shifts to the employer to show that it was unable to accommodate the plaintiff's beliefs reasonably without suffering undue hardship.  *Id.*  The issue is whether the evidence, viewed in the light most favorable to the plaintiff, is sufficient to create a jury question regarding religious discrimination.

In determining whether the nonmovant has created a genuine issue of material fact, the court looks to rebuttal evidence of pretext "in tandem with evidence presented as part of the *prima facie* case."  *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999).  The Supreme Court has held that a "plaintiff's *prima facie* case, combined with sufficient direct evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Reeves*, 530 U.S. at 148.  The trier of fact may "infer the ultimate fact of discrimination from the falsity of the employer's explanation."  *Id*. at 147; *see also Vade v. Miss. State Univ.*, 218 F.3d 365, 374 n.23 (5th Cir. 2000) (discussing application of *Reeves*).  "[S]uch a showing by the plaintiff will [not] always be adequate to sustain a jury's finding of liability.  Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder would conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148.  At all times, the plaintiff retains the ultimate burden of persuasion.  *See Burdine*, 450 U.S. at 253.

**II.     The Summary Judgment Evidence**

McCracken, who describes himself as a Christian, worked for Exxon Mobil from 1967 to 1985, when he left to pursue other professional interests.  McCracken returned to work at Exxon Mobil's Baytown Olefins Plant through a separate company from 1987 to July 1989 and returned briefly to the same plant in October 1990.  In the late 1990s, McCracken worked at the Baytown plant through a staffing company, Allstates.  In 1999, Kelly Scientific Resources, Inc. took over the Allstates contract, at which point McCracken and the other former Allstates employees signed contracts with Kelly Services, Kelly Scientific Resources, Inc.'s parent company.  Kelly Services's contract with Exxon Mobil was in place throughout McCracken's employment.

At the Baytown plant, McCracken worked as a lab technician with five to fifteen other individuals.  The lab performed chemical tests on ethylene production, as directed by Exxon Mobil.  Because of McCracken's existing knowledge of this process, he needed no additional training from Kelly Services.  McCracken received favorable job performance reviews during this period.

In early 2000, McCracken noticed that several employees in the lab "adhered to certain spiritual, religious teachings and practices of an individual named Alix Rodwell and a 'new age' belief system, including a healing practice known as 'Reiki.'" (Docket Entry No. 25 at 7).  According to advertisements that McCracken submitted as summary judgment evidence, Rodwell styles herself a life coach and spiritual advisor.  She offers services

4

including, "Right Family Dynamics, Clearing Family Patterns, New Decision Therapy, Past Life Sessions, Soul Retrieval, Entity Clearing, Reiki – Energy Work, [and] Psychic Readings." (Docket Entry No. 26, Ex. 18 at 6). According to the advertisement, Rodwell has many happy customers who believe that she has transformed their lives, removed evil spirits from their minds, and even cured illnesses such as hepatitis. (Docket Entry No. 26, Ex. 16).

In May 2000, Lisa Macuba,[1] one of McCracken's co-workers (and the only other Kelly Services employee in the lab), was diagnosed with cancer. (Docket Entry No. 26, Ex. 17). Macuba informed Elaine Scharold, her supervisor in the lab. Scharold responded by telling Macuba that evil in her life caused the cancer and recommending that Macuba make an appointment with Rodwell to remove the evil spirits. According to McCracken, when Macuba hesitated, Scharold, along with lab workers Teacy Williams and Colleen DuRousseau, pressured her to go see Rodwell. Macuba made an appointment with Rodwell, but cancelled it. After this incident, as reported by McCracken, Scharold, who had a positive working relationship with Macuba in the past, became hostile. Additionally, Macuba told McCracken that she had overheard Scharold and Williams discussing Macuba's future employment in bleak terms, and that Scharold had told Macuba her job was in jeopardy. (*Id.*).

---

[1]

The record also refers to Macuba's maiden name, Lisa Irwin.

Macuba told McCracken about these incidents.  McCracken in turn reported them to Kelly Services and Exxon Mobil.  After investigating, Exxon Mobil determined that no harassment had occurred.  Exxon Mobil counseled Scharold that she should refrain from conversations that might make workers under her supervision – like Macuba – uncomfortable, and that she should keep her personal beliefs to herself.  (Docket Entry No. 26, Ex. 15).  Additionally, Exxon Mobil contacted Kelly Services to involve that company in the investigation and to emphasize that any employment actions taken with regard to contract employees should be taken by Kelly Services, not Exxon Mobil.  (Docket Entry No. 26, Ex. 20).  Exxon Mobil eventually terminated Macuba's employment.

The record evidence demonstrates that Exxon Mobil intended to eliminate Macuba's position as part of an efficiency plan within the lab.  (Docket Entry No. 15 at EMWM 299).  Until Exxon Mobil fully executed the plan, however, Macuba needed to have gas chromatherapy experience so that she could train the others in the lab.  (*Id.*).  Although Macuba argued that she had the requisite experience, Exxon Mobil disagreed.  (Docket Entry No. 26, Ex. 17).  Scharold also claimed that Macuba had a record of tardiness.  (*Id.*).

In 2002, members of the "Rodwell Group" inside the lab allegedly pressured another employee, Cindy Foster, to visit Rodwell for "a day of pampering."  McCracken claims that after Foster expressed disinterest and refused to engage Rodwell full-time as a spiritual advisor, she was threatened and mistreated by the other lab workers and eventually fired.[2]

---

[2]

Foster filed a discrimination suit as a result of this conduct.  (Docket Entry No. 26, Ex. 16).  This court remanded that case to state court.  *Foster v. Exxon Mobil*, No. 05-CV-776 (S.D. Tex. June 13, 2005)

McCracken again complained to Kelly Services and Exxon Mobil.  Exxon Mobil conducted a full investigation.  (Docket Entry No. 26, Ex. 15).  When questioned about the incident, Foster disclaimed any allegation that the employees had harassed or pressured her.  (Docket Entry No. 26, Ex. 15 at EMWM 302).  After interviewing all of the employees involved, Exxon Mobil concluded that the allegations of discrimination and harassment based on religion were "unfounded."  (*Id.*).

Undeterred, McCracken attempted to reach the Chief Executive Officer of Exxon Mobil, Lee Raymond.  McCracken sent at least two emails to Raymond in which he described, in detail, numerous problems at the lab.  (Docket Entry No. 26, Ex. 19–20).  McCracken did not file formal complaints about some of the incidents he described in the email with Kelly Services, even though he had done so with the previous religious harassment complaints he made on behalf of others.  (Docket Entry No. 26, Ex. 20).  One of McCracken's complaints was that other employees at the Baytown lab had conspired to sabotage his work.  According to the investigative report prepared in response to this complaint, McCracken ran the wrong test on a group of samples five different times.  (Docket Entry No. 26, Ex. 20).  When confronted with the errors, McCracken claimed that other workers had sabotaged his work.  (*Id.*).  After conducting an analysis of audit reports and an interview with a system expert, Exxon Mobil rejected McCracken's conspiracy theory.

_____

(unreported).

7

In response to complaints from Exxon Mobil about the emails McCracken sent to Raymond, Kelly Services warned him that employment disputes, including claims of harassment, should be presented to, and handled through, Kelly Services, not outside clients such as Exxon Mobil.  (Docket Entry No. 26, Ex. 3 at 77–80; Ex. 4).  Kelly Services made it clear that this was a company policy.  McCracken failed to heed the warning or obey the company policy.  Instead, he sent another email to Raymond at Exxon Mobil.  Kelly Services then fired McCracken.  (Docket Entry No. 26, Exs. 4, 7).  After exhausting administrative remedies on his claims of religious discrimination and retaliation, McCracken filed this lawsuit.

## III.    Analysis

### A. Whether Exxon Mobil Was McCracken's "Employer" for Title VII Purposes

Exxon Mobil's first claim is that Kelly Services, not Exxon Mobil, was his "employer" for Title VII purposes.  To determine whether an entity is an "employer" under Title VII, Fifth Circuit courts apply the "hybrid economic realities/common law control test." *Deal v. State Farm County Mutual Ins. Co. of Tex.*, 5 F.3d 117, 118–19 (5th Cir. 1993).  The "control component" of this test examines whether the alleged employer has the right:  (1) to hire and fire the employee; (2) to supervise the employee; and (3) to set the employee's work schedule.  *Id.* at 119.  The "economic realities" component of the test focuses on whether the alleged employer:  (1) paid the employee's salary; (2) withheld appropriate taxes; (3) provided benefits; and (4) set the terms and conditions of employment.  *Id.* Between the two components, the right to control the employee's conduct is the most

8

important.  *Id.*; *accord EEOC v. Fawn Vendors, Inc.*, 965 F. Supp. 909, 913 (S.D. Tex. 1996)

("[T]he economic factors in this case are outweighed by the extent of [the employer]'s right

to control [the employee]'s work.").

Summary judgment evidence submitted by Exxon Mobil confirms that when he was

fired, McCracken understood that Kelly Services was his employer.  McCracken had signed

a contract with Kelly Services that included a stipulation that he was not an Exxon Mobil

employee, but instead worked as an independent contractor through Kelly Services.  Kelly

Services paid McCracken's salary, benefits, and withheld the appropriate taxes from his

paycheck.  (Docket Entry No. 22, Ex. B at 15–19; Ex. C ¶ 13; Ex. D at 13; Ex. E).  Kelly

Services had the exclusive right to hire and fire McCracken,  supervise him, and set his work

schedule.

McCracken does not specifically dispute this evidence, but argues that Exxon Mobil

worked with Kelly Services in supervising him.  McCracken worked in an Exxon Mobil lab

surrounded by Exxon Mobil employees.  The Kelly Services "supervisor" to whom

McCracken answered worked approximately two miles away from the Exxon Mobil lab and

saw him only once every few months.  (Docket Entry No. 26, Ex. 2 at 6, 8–9).  According

to McCracken, Exxon Mobil in fact provided his training, day-to-day supervision, and set his

work schedule.  Although Kelly Services paid McCracken's salary and benefits, Exxon

Mobil fully reimbursed Kelly Services.  (Docket Entry No. 26, Ex. 2 at 16; Exs. 9, 10).

Exxon Mobil evaluated McCracken's job performance, sent him memoranda, approved the

salary (and raises) he received, and played a role in Kelly Services's decision to fire

McCracken.  (Docket Entry No. 26, Ex. 2 at 9; Ex. 8).  Additionally, Exxon Mobil dictated the job functions performed by the workers in the lab, selected the supervisors, and required every worker to comply with Exxon Mobil's policies.  (Docket Entry No. 26, Ex. 2 at 125–26).

Exxon Mobil relies heavily on an unpublished case with similar facts from the Northern District of Texas.  In *Mayes v. Kelly Services, Inc.*, 2004 WL 533951 (N.D. Tex. Feb. 11, 2004), the court held that Kelly Services, not Onstar, was the plaintiff's employer for Title VII purposes.  As in this case, the summary judgment record in *Mayes* included evidence that Kelly Services, not Onstar, provided the plaintiff's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.  *Id.* at *3.  The contract between Onstar and Kelly Services, also part of the record, required Kelly Services to supply Onstar with employees for assignment and to train those employees for the services to be provided.  *Id.*  "When plaintiff's assignment with Onstar ended, he still had an opportunity to request Kelly to assign him to a different workplace."  *Id.*

McCracken has introduced stronger summary judgment evidence of control by Exxon Mobil than was present in the *Mayes* case.  Although Kelly Services hired, fired, and paid McCracken, and had the right to supervise him and set his hours, Exxon Mobil had the right to — and did — train, supervise, and set the schedule for McCracken.  Fact issues remain as to whether Exxon Mobil could be considered McCracken's employer for Title VII purposes. *Cf. Edwards v. Galveston-Texas City Pilots*, 203 F. Supp. 2d 759, 762 n.1 (S.D. Tex. 2002) (rejecting a claim by defendants that the plaintiff was an independent contractor, not an

employee, because the "Plaintiff produce[d] at least some evidence showing that Defendants control[led] the [Plaintiff's] daily work functions, which is the most crucial factor in assessing the existence of an employment relationship.").

### B.    The *Prima Facie* Case

Exxon Mobil argues in the alternative that McCracken cannot make a *prima facie* case of religious discrimination.   The elements of a *prima facie* showing of religious discrimination are that the plaintiff had a *bona fide* religious belief that conflicted with an employment requirement; that he informed the employer of this belief; and that the employer discharged the plaintiff for failure to comply with the conflicting employment requirement. *Weber v. Roadway Exp., Inc.*, 199 F.3d at 273.   The summary judgment record reveals that these elements are not satisfied.

At McCracken's deposition, when asked what Exxon Mobil/Kelly Services's "business requirement" conflicted with his religious beliefs, he testified that the laboratory had a *de facto* requirement that all employees seek counseling from Alix Rodwell.   (Docket Entry No. 22, Ex. B at 40–43).   According to McCracken, Rodwell promotes a "new age" religious cult to which many of the laboratory employees belonged.   (Docket Entry No. 26, Ex. 1).   The practices that Rodwell conducts, including proselytizing the "Reiki" religion, conflict with McCracken's Christian beliefs.   (*Id.*).   McCracken conclusorily asserted that other employees "pressured" him to consult with Rodwell.   He bases this assertion on allegations by Macuba and Foster that lab employees asked them to consult with Rodwell and discriminated against them when they refused, and on his uncorroborated claims that

11

employees belonging to the "Rodwell Group" received preferential treatment.  Based on these allegations, McCracken claims that the lab imposed an unwritten requirement that employees seek spiritual counseling from Rodwell.

The summary judgment record contains substantial evidence that no such employment requirement existed.  (*See, e.g.*, Docket Entry No. 22, Ex. G ¶ 2).  Furthermore, the summary judgment record contains no evidence that McCracken ever *informed* Exxon Mobil that this alleged business requirement existed.  McCracken did email the Chief Executive Officer of Exxon Mobil on two occasions to complain about numerous personnel concerns. (Docket Entry No. 26, Ex. 20).[3]  At no point did he alert Exxon Mobil management to his litigation claim that he felt obligated to consult with Rodwell or to participate in Rieki-related activities as part of his job.  Moreover, McCracken has not introduced evidence to support his claim that anyone at Exxon Mobil ever asked him to meet with Rodwell in the first place.  To support his claims, McCracken cites only to his affidavit and the documents he submitted to Kelly Services and Exxon Mobil.  "Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient

---

[3]

McCracken attached a document to one of his emails in which he recites a litany of complaints about his coworkers and supervisors. The main thrust of McCracken's complaints is that various supervisors had picked on other workers and McCracken had stood up for them.  Later in the document, McCracken mentions the Macuba-Rodwell incident, but Foster's alleged, similar altercation is never mentioned, and McCracken's discussion of Macuba is based entirely on hearsay. The "Rodwell" issue is only one of many complaints McCracken raised in the document.  Despite the length and detail of the document, McCracken never claims that anyone asked or pressured *him* to see Rodwell; instead, McCracken conclusorily asserts that other employees singled him out because he defended others and was not a member of the "Rodwell Group." (Docket Entry No. 26, Ex. 19).

12

to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997). McCracken has not made a *prima facie* showing of religious discrimination.

McCracken has also failed to raise an issue of triable fact as to whether his job termination resulted from his failure to comply with the purported requirement that he claims conflicted with his Christian beliefs. The summary judgment record reveals that Kelly Services fired McCracken for "[r]epeatedly contacting individuals at Exxon Mobil concerning employment issues." (Docket Entry No. 22, Ex. C at 5). Kelly Services had a policy that contract employees complaining of harassment or related work concerns report those complaints to Kelly Services and follow established protocols for investigating and resolving those problems. (*Id.* at 4–5, 8). Instead of reporting his claims of unprofessional conduct by lab employees through prescribed channels, as he had done with the religious harassment claims, McCracken directly emailed the Exxon Mobil CEO, Lee Raymond. (Docket Entry No. 26, Ex. 19). Exxon Mobil complained to Raymond at Kelly Services about the emails. (Docket Entry No. 26, Ex. 4, 20). Kelly Services warned McCracken on several occasions that he needed to go through the appropriate channels. Despite these warnings, McCracken sent another email to Raymond. (Docket Entry No. 26, Ex. 4).[4]

---

[4]

Additionally, when confronted with incorrect lab work, McCracken alleged a conspiracy by other employees against him. Exxon Mobil investigated this claim and determined that McCracken's claimed conspiracy was "not possible" based on the software and parameters of his experiments. (*Id.*).

13

McCracken has not disputed his violation of Kelly Services's and Exxon Mobil's policy for registering complaints. The summary judgment evidence shows a legitimate basis for the decision to fire McCracken: his violation of the established policy of having contractor employees resolve employment disputes internally, rather than bringing those concerns directly and initially to Exxon Mobil's management. Because McCracken has failed to introduce competent summary judgment evidence raising a fact issue that his job termination stemmed from his refusal to meet with Rodwell or to participate in the alleged Reiki religion, as opposed to his acknowledged violation of this work policy, summary judgment is appropriate for Exxon Mobil on the religious discrimination claim.

### C.   The Retaliation Claim

McCracken alleges that Exxon Mobil and Kelly Services "retaliated against [him] for voicing concerns about religious discrimination against himself and others." (Docket Entry No. 1 ¶ 30). Exxon Mobil responds to this claim by arguing that it played no role in the decision to fire McCracken. (Docket Entry No. 22 at 11).

A plaintiff establishes a *prima facie* case for unlawful retaliation by showing that: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *See Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002) (citing *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001)); *Long*, 88 F.3d at 304; *McMillan*, 710 F.2d at 1116. The key inquiry in this case is whether Exxon Mobil played

14

a role in deciding to fire McCracken and did so because of his testimony in support of the religious discrimination claims of others.

The evidence raises a fact issue on the first question. Although Exxon Mobil contends that its employees had nothing to do with Kelly Services's decision to fire McCracken, the summary judgment record includes documents corroborating McCracken's claim that Exxon Mobil communicated to Kelly Services that it wanted McCracken fired. (Docket Entry No. 26, Exs. 4, 7). The record does not, however, raise a fact issue on the second question. Nothing in the summary judgment record supports McCracken's claim that Exxon Mobil sought his dismissal because he reported religious discrimination in the workplace. Instead, the summary judgment record shows that McCracken persistently violated the work policy that employees of the contractor, Kelly Services, should make complaints about the work place through Kelly Services. McCracken disregarded this policy and warnings about his violations and repeatedly made complaints directly to the Exxon Mobil CEO by email. Moreover, McCracken's emails did not focus on his alleged Title VII-protected activity, but instead contained a litany of complaints about his relationships with other lab employees. In those emails, McCracken cites only a single incident that might be construed to implicate Title VII. (Docket Entry No. 26, Ex. 19). McCracken has not created a triable issue of fact material to whether Exxon Mobil's desire to have McCracken fired related to his participation in activity protected by Title VII.

### D.    The  Hostile Work Environment Claim

Exxon Mobil argues that McCracken failed to exhaust available administrative remedies as to his hostile work environment claim.  A federal court lacks jurisdiction to hear a hostile work environment claim if the plaintiff fails to exhaust administrative remedies. *Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997).  McCracken concedes that he failed to exhaust his administrative remedies and that Exxon Mobil's motion should be granted on his hostile work environment claim.  (Docket Entry No. 25 at 22).  McCracken's hostile work environment claim against Exxon Mobil is dismissed for lack of jurisdiction.

## IV.    Conclusion

Exxon Mobil's motion for summary judgment is granted, and Exxon Mobil is dismissed from this case.  A status conference on the remaining issues is set for **November 1, 2005, at 4:00 p.m.**

SIGNED on October 12, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge